**No. 22-3009**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

―――――――――――

ST VINCENT MEDICAL GROUP, INC.,
d/b/a Ascension Medical Group - Indiana,

Plaintiff-Appellant,

v.

UNITED STATES DEPARTMENT OF JUSTICE,

Defendant-Appellee.

―――――――――――

On Appeal from the United States District Court
for the Southern District of Indiana, No. 22-mc-00011 (Hanlon, J.)

―――――――――――

## BRIEF FOR APPELLEE

―――――――――――

BRIAN M. BOYNTON
  *Principal Deputy Assistant*
  *Attorney General*

ZACHARY A. MYERS
  *United States Attorney*

DANIEL TENNY
BENJAMIN M. SHULTZ
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7211*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-3518*

# TABLE OF CONTENTS

**Page**

STATEMENT OF JURISDICTION .............................................................. 1

STATEMENT OF THE ISSUES ................................................................ 1

PERTINENT STATUTES AND REGULATIONS ................................... 2

STATEMENT OF THE CASE ................................................................... 2

    A.    Statutory Background ................................................................ 2

    B.    Factual Background ................................................................... 5

    C.    Prior Proceedings .................................................................. 10

SUMMARY OF ARGUMENT ................................................................ 15

STANDARD OF REVIEW ...................................................................... 18

ARGUMENT ............................................................................................ 19

I.    This Court Must Apply APA Review Standards ............................ 19

II.    DOJ Did Not Act Arbitrarily And Capriciously When
It Denied Ascension's *Touhy* Request ............................................ 23

    A.    DOJ Reasonably Declined To Provide The
Requested Testimony Because The Government's
Law Enforcement Interests Outweighed The
Testimony's Potential Value ................................................. 24

    B.    The Requested Testimony Implicated The Grand Jury
Secrecy Rule .......................................................................... 39

CONCLUSION ........................................................................................ 46

i

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**                                                                                  **Page(s)**

*Anaya v. United States,*
  815 F.2d 1373 (10th Cir. 1987) ............................................................. 43

*Anderson v. Marion Cty. Sheriff's Dep't,*
  220 F.R.D. 555 (S.D. Ind. 2004) ........................................................... 35

*Bagdonas v. Department of Treasury,*
  93 F.3d 422 (7th Cir. 1996) .................................................................. 20

*Chrysler Corp. v. Brown,*
  441 U.S. 281 (1979) .............................................................................. 2

*COMSAT Corp. v. National Sci. Found.,*
  190 F.3d 269 (4th Cir. 1999) ........................................................... 23, 32

*Dellwood Farms, Inc. v. Cargill, Inc.,*
  128 F.3d 1122 (7th Cir. 1997) ...................................... 17, 24, 25, 33, 34

*Douglas Oil Co. of Cal. v. Petrol Stops N.W.,*
  441 U.S. 211 (1979) ......................................................................... 40, 44

*Edwards v. U.S. Dep't of Justice,*
  43 F.3d 312 (7th Cir. 1994) ............................... 2, 13, 16, 19, 20, 21, 32

*Elko Cty. Grand Jury, In re,*
  109 F.3d 554 (9th Cir. 1997) ................................................................ 23

*Exxon Shipping Co. v. U.S. Dep't of Interior,*
  34 F.3d 774 (9th Cir. 1994) ............................................................. 22, 23

*FCC v. Prometheus Radio Project,*
  141 S. Ct. 1150 (2021) ......................................................................... 20

*Frankenhauser v. Rizzo*,
  59 F.R.D. 339 (E.D. Pa. 1973) .................................................. 33, 34, 35

*Grand Jury Proceedings, Special September, In re,*
  *1986*, 942 F.2d 1195 (7th Cir. 1991) ............................................. 44, 45

*Houston Bus. Journal, Inc. v. Office of Comptroller of Currency,*
  86 F.3d 1208 (D.C. Cir. 1996).............................................................. 22

*Martin v. Consultants & Adm'rs, Inc.,*
  966 F.2d 1078 (7th Cir. 1992) ....................................................... 40, 41

*Okere v. United States,*
  983 F.3d 900 (7th Cir. 2020) ................................................................. 1

*Puerto Rico v. United States,*
  490 F.3d 50 (1st Cir. 2007)......................................................... 23, 32-33

*Sierra Club v. Marita,*
  46 F.3d 606 (7th Cir. 1995) .................................................................. 35

*Special February, 1975 Grand Jury, In re,*
  662 F.2d 1232 (7th Cir. 1981) .................................................. 40-41, 41

*Special March 1981 Grand Jury, In re,*
  753 F.2d 575 (7th Cir. 1985) ................................................................ 43

*United States v. L. A. Tucker Truck Lines, Inc.,*
  344 U.S. 33 (1952) ..................................................................... 29-30

*United States v. Stanford,*
  589 F.2d 285 (7th Cir. 1978) ...................................................... 40, 42

*United States ex rel. Touhy v. Ragen,*
  340 U.S. 462 (1951) ............................................................................. 2

*Watts v. Securities & Exch. Comm'n,*
  482 F.3d 501............................................................................... 22

**Statutes:**

Administrative Procedure Act (APA):
  5 U.S.C. § 706 ........................................................................ 19
  5 U.S.C. § 706(2)(A) .......................................................... 19, 20

5 U.S.C. § 301 ........................................................................... 2

21 U.S.C. § 843(a)(3) ......................................................... 10, 28

28 U.S.C. § 1291 ....................................................................... 1

28 U.S.C. § 1331 ....................................................................... 1

**Regulations:**

28 C.F.R. § 16.21 *et seq.* ......................................................... 3
  28 C.F.R. § 16.21(a) ............................................................. 37
  28 C.F.R. § 16.21(a)(2) ........................................................... 3
  28 C.F.R. § 16.21(d) .......................................................... 3, 38
  28 C.F.R. § 16.22(c) .......................................................... 3, 30
  28 C.F.R. § 16.24(b) ............................................................. 4
  28 C.F.R. § 16.24(b)(2) ........................................ 17, 31-32, 38
  28 C.F.R. § 16.26(a) .......................................................... 3, 4
  28 C.F.R. § 16.26(a)(1) ......................................................... 38
  28 C.F.R. § 16.26(a)(2) ..................................................... 18, 37
  28 C.F.R. § 16.26(b) .......................................................... 4, 38
  28 C.F.R. § 16.26(b)(1) ......................................................... 39
  28 C.F.R. § 16.26(b)(5) ......................................................... 37
  28 C.F.R. § 16.26(c)-(d) ................................................ 4, 32, 38

**Rules:**

Fed. R. App. P. 4(a)(1)(B) ......................................................... 1

Fed. R. Civ. P. 45 ................................................................... 21

Fed. R. Civ. P. 45(a)(2) ........................................................... 21

Fed. R. Crim. P. 6(e) .......................................................................... 39

Fed. R. Crim. P. 6(e)(2)(B)(vi) ....................................................... 39

Fed. R. Crim. P. 6(e)(3)(E) ............................................................. 44

Fed. R. Crim. P. 6(e)(3)(F) ............................................................. 44

## Other Authority:

Dep't of Justice, Justice Manual § 9-11.151,
  https://perma.cc/5H7G-6V3S ......................................................... 7, 28

## STATEMENT OF JURISDICTION

Appellant's jurisdictional statement is not complete and correct.

In this Administrative Procedure Act (APA) case, the district court had

jurisdiction under 28 U.S.C. § 1331, but not under the APA.  *See, e.g.*,

*Okere v. United States*, 983 F.3d 800, 903 (7th Cir. 2020) ("[T]he APA

does not supply an independent source of subject matter jurisdiction to

challenge agency actions in federal court.").  On October 27, 2022, the

district court granted summary judgment to the government and

entered final judgment against the plaintiff.  *See* Opening Br. 43-59.

Plaintiff timely filed the notice of appeal on November 7, 2022, *see*

DE31,[1] within the time prescribed by Fed. R. App. P. 4(a)(1)(B).  This

Court has appellate jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

Plaintiff is a state court litigant who wishes to depose two

Department of Justice (DOJ) employees about their work on a criminal

investigation.  After DOJ denied the request, plaintiff sought review of

the agency's decision under the APA.  The questions presented are:

---

[1] The district court's numbered docket entries are abbreviated
"DE[#]."  Appellant's Appendix is abbreviated "A[page]."  Appellee's
Supplemental Appendix is abbreviated "SA[page]."

1) Whether the APA's standard of review governs plaintiff's APA suit?

2) Whether DOJ acted arbitrarily and capriciously when it declined to make its employees available for the requested testimony?

## PERTINENT STATUTES AND REGULATIONS

Pertinent statutes and regulations are reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

### A.    Statutory Background

Under background sovereign immunity principles, the federal government is immune from state court subpoenas.  *See, e.g.*, *Edwards v. U.S. Dep't of Justice*, 43 F.3d 312, 317 (7th Cir. 1994).  But through rules promulgated under 5 U.S.C. § 301—colloquially known as the federal "housekeeping statute," *see Chrysler Corp. v. Brown*, 441 U.S. 281, 309 (1979)—many federal agencies have created a mechanism for state court litigants and others to nonetheless request documents and testimony.  Such rules are known as *Touhy* regulations.  *See generally United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) (recognizing that rules of this type are validly promulgated under the housekeeping statute).

DOJ's current *Touhy* regulations are codified at 28 C.F.R. § 16.21 *et seq.* Among other things, they apply "in all federal and state proceedings" in which the federal government is not a party and a litigant is requesting or demanding that a DOJ employee provide testimony or documents regarding their official duties. *See id.* § 16.21(a)(2). They also explicitly note that they were written to "only . . . provide guidance for the internal operations of the Department of Justice, and [are] not intended to, and do[] not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by a party against the United States." *Id.* § 16.21(d).

As a baseline matter, if testimony is sought in a case where the government is not a party, DOJ's *Touhy* regulations state that the requestor must give the relevant U.S. Attorney a statement "setting forth a summary of the testimony sought and its relevance to the proceeding." 28 C.F.R. § 16.22(c). After consulting with interested DOJ components, the U.S. Attorney "may" authorize the DOJ employee to provide the requested testimony if the interested component(s) do not object, the U.S. Attorney judges that disclosure is "appropriate" after considering certain factors set forth in 28 C.F.R. § 16.26(a), and

disclosure isn't prohibited because of a factor listed in 28 C.F.R.

§ 16.26(b).  *Id.* § 16.24(b).

The factors listed in § 16.26(a) that the U.S. Attorney should

consider are whether the requested disclosure "is appropriate under the

rules of procedure governing" the underlying case the request arose

from, and whether that disclosure "is appropriate under the relevant

substantive law concerning privilege."  28 C.F.R. § 16.26(a).

Meanwhile, § 16.26(b) sets out a nonexclusive list of grounds on which

the U.S. Attorney should deny requested disclosures.  These include, as

relevant here, that the disclosure would violate a statute or "rule of

procedure, such as the grand jury secrecy rule," and that disclosure

"would reveal investigatory records compiled for law enforcement

purposes, and would interfere with enforcement proceedings or disclose

investigative techniques and procedures the effectiveness of which

would thereby be impaired."  *Id.* § 16.26(b); *see also id.* § 16.26(c)-(d)

(explaining that even when none of the factors listed in § 16.26(b) are

present, the relevant DOJ decisionmaker may still refuse to authorize

disclosure if "in that person's judgment, after considering [§ 16.26(a)],

disclosure is unwarranted").

4

### B.    Factual Background

1. This case has its genesis in a lawsuit currently pending in Indiana state court, *Story v. St. Vincent Medical Group, Inc.*, No. 29C01-2105-PL-003135 (Hamilton Cir. Ct. Mar. 4, 2021).  The plaintiff in that case, Dr. Timothy Story, has sued his former employer, St. Vincent Medical Group, Inc. d/b/a Ascension Medical Group – Indiana ("Ascension").  SA1.  As relevant here, Dr. Story contends that Ascension broke its employment contract with him when it purported to fire him "for cause" in late August of 2020.  SA10-11.[2]

As the basis for this claim, Dr. Story alleged that his employment contract required him to notify Ascension within three days after he gained "actual knowledge" of the occurrence of a listed event.  SA2.  One listed event was if "an event occurs that [Dr. Story] should reasonably believe may have risk management or legal ramifications affecting [Dr. Story's] practice, the Practice Unit, or any [Ascension] facility."  SA3.

Dr. Story further asserted in state court that when Ascension terminated him in August 2020, it provided two justifications.  First,

---

[2] Dr. Story also contends that Ascension took various subsequent actions that tortiously interfered with his business relationships.  SA9-10**.**

Ascension stated that it had "become aware of an investigation by federal law enforcement agencies into [Dr. Story's] controlled substance prescribing practices, of which [Dr. Story] failed to notify Ascension . . . as required by" the employment agreement. Second, Ascension cited the results of Ascension's own internal investigation that it commenced after learning of the federal investigation. SA5-6. Dr. Story then alleged that to the "best of his knowledge," he was not the target or subject of a federal investigation, and that even if he was, that eventuality would not have triggered any duty to notify Ascension under the employment agreement. SA5-6, 10-11.

2. The parties in the state court case have already conducted substantial discovery, much of which is available on the state court's publicly accessible docket. *See* https://public.courts.in.gov/mycase/#/vw/Search (using 29C01-2105-PL-003135 for the search query); Opening Br. 4. Particularly relevant are several documents that Ascension has publicly filed.

First, Ascension has presented the deposition testimony of an attorney for Dr. Story, who had represented him in the May to August 2020 timeframe. *See* SA19-20, 41-42. That attorney recounted how in

6

late May of 2020, Dr. Story received an administrative subpoena from
the Drug Enforcement Administration (DEA).  SA19-24, 53-54.  Dr.
Story's attorney then contacted Assistant U.S. Attorney Brad
Blackington and asked him to direct "any communications" to her going
forward.  SA23-24.  The attorney and AUSA Blackington then had
several conversations over the next few months.  Those conversations
initially covered Dr. Story's response to DEA's administrative subpoena,
but soon after also covered Dr. Story's responses to several federal
grand jury subpoenas directed to Dr. Story, and some companies he
owned, that were served in June or July 2020.  *See* SA23-24, 27-35.

Dr. Story's attorney further testified that at some point within
this time frame, she asked AUSA Blackington for more information
about Dr. Story's role in the government's investigation.  SA24.  The
response, she maintained, was that a patient of Dr. Story's was the
"target" of the investigation, while Dr. Story was not a "target" though
he might have been a "subject" and could potentially become a "target"
at a future point.  SA24-26, 52-53; *see also* Dep't of Justice, Justice
Manual § 9-11.151, https://perma.cc/5H7G-6V3S (Justice Manual)
(explaining that the "target" of a grand jury investigation is someone for

whom the grand jury has "substantial evidence linking him or her to the commission of a crime" and who is a "putative defendant," while a "subject" is just "a person whose conduct is within the scope of the grand jury's investigation").

Ascension also presented in the state court litigation the deposition testimony of an Ascension in-house attorney. *See* Defendant's Designation of Evidence in Support of Motion for Summary Judgment, Vol. III, *Story v. St. Vincent Medical Group, Inc.*, No. 29C01-2105-PL-003135 (Ind. Hamilton Cir. Ct.) (filed June 23, 2022) (hereinafter "Ascension's State Court Vol. III"), at 66.[3]  That attorney explained that in early August 2020, Ascension received a grand jury subpoena for various Ascension documents, which the attorney sometimes offhandedly called a "DEA grand jury subpoena" or a subpoena that "DEA" had issued.  Ascension's State Court Vol. III, at 78, 84, 91.  The attorney further asserted that around that time she had conversations with DEA investigator Andrew Ratcliff in an attempt to discern whether certain Ascension personnel were a "focus" of the

---

[3] *Available at* https://public.courts.in.gov/mycase/#/vw/Search (using 29C01-2105-PL-003135 for the search query).

8

investigation, and she maintained that Ratcliff told her none of those Ascension personnel were the focus, and that instead "[t]heir focus was Dr. Story alone." Ascension's State Court Vol. III, at 79-80. The attorney also testified that she had a conversation with AUSA Blackington (the exact timing of which is unclear) in which she thought the AUSA implied he was considering criminal charges against Dr. Story. Ascension's State Court Vol. III, at 80. And the attorney testified that after Dr. Story was terminated from Ascension, she had further conversations with Blackington and Ratcliff about the investigation and an additional grand jury subpoena served on Ascension in September 2020. Ascension's State Court Vol. III, at 81-98-99.

Finally, Ascension has publicly filed in the state court litigation a copy of a signed proffer agreement between Dr. Story and the U.S. Attorney's Office. Defendant's Designation of Evidence in Support of Motion for Summary Judgment, Vol. IV, *Story v. St. Vincent Medical Group, Inc.*, No. 29C01-2105-PL-003135 (Ind. Hamilton Cir. Ct.) (filed

June 23, 2022) (hereinafter "Ascension's State Court Vol. IV"), at 7-9.[4]

The first sentence of that agreement, dated February 17, 2021, states:

"[a]s you are aware, you are a subject of a federal investigation into

violations of 21 U.S.C. § 843(a)(3) (acquisition of controlled substances

by fraud) and related offenses."  Ascension's State Court Vol. IV, at 7-9.

### C.   Prior Proceedings

1.  In October 2021, Ascension submitted a request to DOJ under

the agency's *Touhy* regulations in which it asked that Blackington and

Ratcliff be made available for depositions.  A8.  That brief request

asserted that in August 2020 Ascension had learned that DEA was

investigating Dr. Story and had also learned that Dr. Story previously

provided Ascension records to DEA in response to a DEA subpoena

without first notifying Ascension about that subpoena.  A8.  Ascension

claimed that Dr. Story's failure to make that disclosure to Ascension

violated the part of his employment contract that required him to notify

Ascension "of any event that he should reasonably believe may have

risk management or legal ramifications affecting his practice,

---

[4] *Available at* https://public.courts.in.gov/mycase/#/vw/Search (using
29C01-2105-PL-003135 for the search query).

[Ascension], or any [Ascension] facility." A8. And Ascension requested that Ratcliff and Blackington testify in order to refute Story's argument that the DEA subpoena and related investigation were limited to a particular patient and some associated individuals, and were not focused on Dr. Story himself. A8-9.

Although Ascension included a copy of Dr. Story's state court complaint, Ascension did not identify any other defense that it thought the requested testimony was relevant to. *See* A8-10. And Ascension contended that the only things it wished to ask Ratcliff and Blackington were about 1) their communications directly with Dr. Story; 2) their communications directly with Dr. Story's counsel; and 3) their communications directly with Ascension personnel.

The U.S. Attorney denied Ascension's request in December 2021. The denial letter explained that Ratcliff had only had "several short conversations with Dr. Story's office assistant and Dr. Story" about service of DEA's administrative subpoena, with all substantive conversations thereafter occurring between AUSA Blackington and Story's counsel. A11. The letter therefore focused on Blackington, and it explained that the requested testimony from him would implicate the

grand jury secrecy rule, the law enforcement investigatory privilege, and potentially also the work product doctrine (to the extent the inquiry touched on mental impressions).  A11.  The letter also specifically noted that the requested information could constitute an unwarranted invasion of privacy because it might reveal information about individuals who were never charged but who were investigated or who participated in grand jury proceedings or a criminal investigation.  A11-12.

The U.S. Attorney's letter went on to note that Ascension had not really established any need for the testimony.  Any communications with Dr. Story's counsel could be obtained from that counsel.  Similarly, any communications with Ascension's personnel could be obtained from those individuals, and would not be relevant anyway since the only identified issue in Ascension's *Touhy* request was *Dr. Story*'s knowledge of the investigation, not Ascension's.  A12.

Ascension responded with a one paragraph email asking DOJ to reconsider.  That email presented no additional analysis and made no attempt to address the issues surfaced in DOJ's denial letter.  Instead, after requesting confirmation that Ascension had exhausted its

administrative remedies, the email simply noted that "[t]he specific areas of inquiry we want are the communications that either Blackington or [Ratcliff] had with [Ascension] personnel or Story/Story's counsel, all outside of the grand jury context."  A13.

The U.S. Attorney again denied the request, using reasoning similar to the original letter, and also providing additional detail regarding why the request implicated the grand jury secrecy rule, witness privacy rights, the law enforcement investigatory privilege, and the work product doctrine.  A14-16.

2.  Ascension then filed the instant action in the Southern District of Indiana challenging DOJ's decision and naming DOJ as the defendant.  As Ascension explained in its complaint, it was doing so because under "controlling case law" the "appropriate" way to challenge an agency's denial of a *Touhy* request was by "filing a separate action under the APA."  A2.

Following cross motions for summary judgment, the district court ruled for the government.  The court first explained that its review in this APA suit had to be under the APA's arbitrary and capricious standard.  Opening Br. App. 47-49 (citing, *inter alia*, *Edwards v. U.S.*

13

*Dep't of Justice*, 43 F.3d 312 (7th Cir. 1994)).  And the court held that DOJ's decision was not arbitrary and capricious.  In its essentials, Ascension was trying to obtain testimony to determine if Blackington or Ratcliff had ever told Dr. Story that he was the subject or target of their criminal investigation.  Opening Br. App. 50-51.  As to AUSA Blackington, DOJ reasonably found that the request implicated the law enforcement investigatory privilege, as revealing that kind of information could "make citizens more hesitant to provide information during federal investigations," "could affect the privacy rights of third parties," and might reveal "information contained in investigatory records."  Opening Br. App. 53-54.  Dr. Story's lawsuit could not waive that privilege since it belonged to the government.  Opening Br. App. 54.  And Ascension's need did not overcome the "strong presumption" in favor of the privilege because Ascension already had the testimony of Dr. Story, his counsel, the Ascension personnel who spoke to Blackington, and the proffer letter.  Opening Br. App. 55.  The court also credited DOJ's assessment that investigator Ratcliff did not possess responsive information and thus concluded that DOJ acted reasonably in choosing not to divert Ratcliff from his normal duties to

provide state court testimony. Opening Br. App. 55-56. In light of its disposition, the district court did not reach DOJ's arguments about grand jury secrecy. *See* Opening Br. App. 55-56.

## SUMMARY OF ARGUMENT

In connection with a private civil suit in state court, Ascension is trying to depose a federal prosecutor and federal investigator in order to ask them questions about a federal criminal investigation. As presented to DOJ, Ascension's justification for this extraordinary request turned on a single state court defense that it wanted to advance: demonstrating that it had properly terminated Dr. Story because he had earlier become aware of a government investigation into him that triggered a reporting duty under his employment contract. DOJ denied that request for information about a criminal investigation, and among other things it pointed to the law enforcement investigatory privilege and the grand jury secrecy rule. DOJ also explained (and the state court discovery has reinforced) that Ascension already has access to essentially everything it needs about Dr. Story's pre-termination knowledge that Ascension could have otherwise hoped to obtain from

AUSA Blackington and DEA investigator Ratcliff.  The district court correctly sustained DOJ's decision.

As a threshold matter, the district court properly invoked the APA's arbitrary and capricious standard of review.  This Court's decision in *Edwards v. U.S. Dep't of Justice*, 43 F.3d 312 (7th Cir. 1994), required exactly that.  Even if it had not, Ascension's alternative proposal of applying the discovery rules from the Federal Rules of Civil Procedure makes no sense in a freestanding APA case, and would also lead to an automatic loss for Ascension under the terms of Rule 45.  Tellingly, even those courts of appeals that have adopted Ascension's preferred standard with regard to *federal* court litigation have refused to extend that rule to *Touhy* requests in connection with *state* court litigation.

The district court also correctly concluded that DOJ's decision was not arbitrary and capricious.  Ascension unquestionably sought testimony about a federal criminal investigation, triggering the law enforcement investigative privilege (as well as its underlying policy concerns).  And particularly after applying the "strong presumption" in favor of keeping that investigatory information under the control of the

executive branch, *see Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122 (7th Cir. 1997), DOJ reasonably denied Ascension's *Touhy* request. DOJ explained that the requested testimony would add essentially nothing new to establish Dr. Story's pre-termination knowledge of the investigation.  It would also implicate law enforcement interests and third-party privacy interests, while simultaneously diverting agency resources from important law enforcement tasks.

None of that is altered by Ascension's attempt on appeal to identify a *different* need for the requested testimony: destroying Dr. Story's credibility.  Administrative law principles do not permit this shift in reasoning once the case reaches litigation, and that interest would in any event appear to be served by evidence that Ascension already possesses.  Ascension also fails to recognize that DOJ's *Touhy* regulations give the agency broad discretion to deny a *Touhy* request whenever the deciding official believes disclosure would not be "appropriate."  28 C.F.R. § 16.24(b)(2).  This means that decisions on *Touhy* requests are essentially an agency policy decision, and the decision here was a reasonable one.  Ascension in any event also misreads the *Touhy* regulations, which among other things direct DOJ

17

to account for the "relevant substantive law concerning privilege." *Id.*

§ 16.26(a)(2).

Finally, although this Court (like the district court) need not reach the issue, DOJ also correctly determined that Ascension's requests implicated the grand jury secrecy rule. This Court has clarified that something can be "before the grand jury" if it reveals something about the grand jury's investigation, even if it was not literally presented to the grand jury in precisely the same format. DOJ thus reasonably concluded that Ascension's requested testimony would be about the grand jury's targets, subjects, and desired information, raising the concerns articulated in this Court's case law. And none of that is altered by Ascension's supposition that it could successfully bring a disclosure petition in district court under Federal Rule of Criminal Procedure 6(e)(3). The district court had before it DOJ's denial of a *Touhy* request, not a Rule 6(e)(3) disclosure petition, rendering Ascension's supposition irrelevant.

## STANDARD OF REVIEW

This lawsuit was brought under the APA to challenge a discrete agency action. A2. Any reviewing court must therefore sustain the

18

agency's action unless, based on the record before the agency, the agency's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); *see also Edwards v. U.S. Dep't of Justice*, 43 F.3d 312, 314 (7th Cir. 1994); *infra* pp.19-23.  This Court engages in de novo review over a district court's decision in an APA review case, applying the same arbitrary and capricious standard as the district court.  *See Edwards*, 43 F.3d at 314.

## ARGUMENT

## I.   **This Court Must Apply APA Review Standards**

As Ascension acknowledged in its complaint, it brought this case under the APA to challenge a specified agency action: DOJ's decision to deny Ascension's *Touhy* request.  A2.  Ascension further acknowledged that it was invoking the APA because under "controlling case law, . . . the appropriate means to challenge a federal entity's denial of discovery in related state court litigation is . . . by filing a separate action under the APA."  A2 (citing, *inter alia*, *Edwards v. U.S. Dep't of Justice*, 43 F.3d 312 (7th Cir. 1994)).  The district court properly applied the APA's review standards to this suit.  *See* 5 U.S.C. § 706.

This Court already held in *Edwards* that APA standards apply when a state court litigant seeks review of a federal agency's *Touhy* decision. *See Edwards*, 43 F.3d at 314. That should be the end of the matter: this case is governed by the traditional arbitrary and capricious standard, under which DOJ's decision will be sustained if rational, so long as its path can be reasonably discerned. *See* 5 U.S.C. § 706(2)(A); *see also*, *e.g.*, *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021); *Bagdonas v. Department of Treasury*, 93 F.3d 422, 425-26 (7th Cir. 1996).

Ascension's argument that this Court should bypass the APA and apply the discovery standards articulated in the Federal Rules of Civil Procedure cannot be reconciled with *Edwards*. Ascension points out that this Court in *Edwards* held that the *Edwards* plaintiff's initial efforts to enforce a state-court discovery decision were jurisdictionally barred, *see* Opening Br. 11, but ignores that the Court also affirmed the district court's rejection of an APA claim on the merits, *see Edwards*, 43 F.3d at 317. And the Court did so only after stating explicitly that "the district court was correct in reinstating" the action as an APA claim so that it could "determine whether the Department acted arbitrarily,

20

capriciously, with an abuse of discretion, or otherwise contrary to law,"
citing "5 U.S.C. § 706(2)(A)." *Id.* at 315. This Court's decision in
*Edwards* thus establishes the standard of review applicable to this case.

In addition, the provisions of the Federal Rules of Civil Procedure
upon which Ascension seeks to rely are inapposite on their own terms.
Federal Rule of Civil Procedure 45, which governs nonparty subpoenas,
pertains only to subpoenas issued in connection with actions pending in
federal court and thus has no application here. *See* Fed. R. Civ. P.
45(a)(2) (requiring that a subpoena "issue from the court where the
action is pending"). As this Court confirmed in *Edwards*, sovereign
immunity would preclude enforcement of a subpoena in connection with
a state-court action. 43 F.3d at 317. And no such subpoena has been
issued in this case in any event.

For similar reasons, Ascension does not advance its argument by
citing cases from other circuits that have declined to apply APA
standards to subpoenas issued in connection with federal litigation.
Although, as Ascension concedes, the issue of the proper standard to
apply in those circumstances has divided the courts of appeals, *see*
Opening Br. 9, for purposes of this case the relevant point is that even

21

those decisions that have declined to apply an APA standard when federal subpoenas are at issue have expressly distinguished the circumstances here.  The D.C. Circuit stated, for example, that "state court subpoenas present entirely different issues (because of the Supremacy Clause and sovereign immunity)," and it recognized that "a state court litigant's only recourse from a federal agency's refusal to comply with a state court subpoena is to bring an APA claim— necessarily governed by the APA's arbitrary and capricious standard— against the agency in federal court."  *Watts v. Securities & Exch. Comm'n*, 482 F.3d 501, 508-09, 508 n.* (D.C. Cir. 2007); *see also Houston Bus. Journal, Inc. v. Office of Comptroller of Currency*, 86 F.3d 1208, 1211-14 (D.C. Cir. 1996) (sole remedy for state court litigant disappointed with agency *Touhy* decision was a federal court APA suit).

Similarly, in *Exxon Shipping Co. v. U.S. Department of Interior*, 34 F.3d 774 (9th Cir. 1994), on which Ascension heavily relies, the Ninth Circuit confirmed that no subpoena against a U.S. official could be effective "in a state civil action not involving the United States."  *Id.* at 778.  The court's holding regarding the standard to be applied to the subpoena at issue in that case was thus limited to the circumstances

22

presented there, where the subpoena was issued in connection with an ongoing trial "in federal district court . . . in the underlying civil suit," *id.* at 776; *see also In re Elko Cty. Grand Jury*, 109 F.3d 554, 556 (9th Cir. 1997) (sovereign immunity meant federal agency could not be forced to comply with state court subpoena).  There is no federal court action at issue here, and in these circumstances courts of appeals— including this Court in *Edwards*—have unanimously concluded that the APA's standard of review applies.  *See also Puerto Rico v. United States*, 490 F.3d 50, 60-61 (1st Cir. 2007); *COMSAT Corp. v. National Sci. Found.*, 190 F.3d 269, 277-78 (4th Cir. 1999).

## II. DOJ Did Not Act Arbitrarily And Capriciously When It Denied Ascension's *Touhy* Request

The district court properly applied the required arbitrary and capricious standard and upheld the agency's decision.  As the court explained, the government reasonably concluded that the requested testimony implicated privileged information and that Ascension had no pressing need for it.  Moreover, although the district court did not reach the issue, the requested testimony could also intrude on grand-jury matters whose disclosure would be prohibited outright.  DOJ's denial of the *Touhy* request thus fell comfortably within its ample discretion.

**A.    DOJ Reasonably Declined To Provide The Requested Testimony Because The Government's Law Enforcement Interests Outweighed The Testimony's Potential Value**

1.  Ascension's *Touhy* request sought deposition testimony from a federal prosecutor and a federal investigator regarding a federal criminal investigation.  Ascension was particularly interested in information about the targets of the investigation, the investigation's focus and any degree to which it may have shifted over time, and other sensitive matters.  Ascension points to no *Touhy* case in which a federal prosecutor has been compelled to testify regarding such matters, over the federal government's objection, in connection with civil litigation in state court.  The district court properly declined Ascension's invitation to chart this new course.

As this Court has explained, federal law recognizes that control over criminal investigations is placed "firmly in the executive branch," and thus judicial interference with criminal investigations is normally improper when invited by someone who is neither a criminal suspect nor a criminal defendant.  *Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122, 1125 (7th Cir. 1997).  Accordingly, this Court has recognized that government information about a federal criminal investigation is

24

normally privileged from disclosure, and parties who nonetheless seek to obtain such information must overcome "a pretty strong presumption against lifting the privilege." *Id.*

Here, there is no doubt that Ascension has requested testimony about a criminal investigation. Its inquiry focuses on Dr. Story's precise status in that investigation at various stages, as well as various efforts by the government to advance the investigation through contact with third parties. It would be extraordinary to compel the government, over its objection, to provide live testimony regarding such sensitive matters. Doing so could compromise the confidentiality that is essential to criminal investigations, and could also invade the privacy of Dr. Story and others who might have been the subject or target of an investigation but have not been charged with a federal crime. Opening Br. App. 54; *accord* SA20-21, 56 (testimony of Dr. Story's counsel, indicating that the DEA subpoena was accompanied by a request for confidentiality).

Ascension offers no plausible basis to refute the common-sense conclusion that testimony regarding a federal criminal investigation is subject to the law enforcement privilege. Its primary tactic on appeal is

instead to argue that the privilege is overcome here, which it does by trying to minimize the scope of the requested testimony and by asserting that the only testimony it seeks relates to "communications . . . with Dr. Story, his counsel, and Ascension personnel."  Opening Br. 7.  But the subject matter of those communications was a federal investigation, and specifically who was a target or subject of the investigation at any given time.  Deposition testimony on that topic threatens to disclose privileged information, both directly as the communications concern the investigation itself, as well as because a deposition (and potential cross-examination by Dr. Story's counsel) could probe the foundation for the federal officials' recollection of the communications based on the status of the investigation at the relevant times.

In addition, to the extent that the testimony would have been as narrow as Ascension suggests, the district court properly recognized that it would add little to what is already in the record in the state court case.  In its *Touhy* request, Ascension identified only one state court defense to which it thought the testimony was relevant: establishing that Dr. Story was properly terminated because he failed

26

to notify his employer about DEA's administrative subpoena to him.
A8. Ascension apparently believed or suspected that someone from
DOJ had told Dr. Story before his termination, and in connection with
that administrative subpoena, that Dr. Story was a "focus" of the
government's investigation. A8-9.

Insofar as Ascension sought to prove this through testimony about
Blackington and Ratcliff's communications with Dr. Story directly, DOJ
explained that there was simply nothing of substance that could assist
Ascension. Ratcliff only had a few short conversations with Dr. Story
about "service" of the DEA administrative subpoena, and after that all
substantive conversations about the subpoena took place between
AUSA Blackington and Dr. Story's counsel, and hence did not involve
Dr. Story directly. A14. That fully accorded with what Ascension
represented Dr. Story had testified to. *See* A9 (noting Dr. Story's
testimony that he had two short conversations with Ratcliff "related to
the service of the original DEA subpoena," and thereafter his counsel
handled all communications with DOJ, aside from an interview with
Blackington that occurred more than six months after his termination).
That also accorded with the testimony of Dr. Story's counsel, who noted

that she got involved very soon after the DEA subpoena was served, and that she asked AUSA Blackington to direct all future conversations through her.  *See* SA19-24, 53-54.

As to communications between DOJ and Dr. Story's counsel, DOJ reasonably and correctly pointed out that Ascension could obtain that testimony directly from that counsel.  A16.  Ascension has now done so, and Dr. Story's counsel testified that Blackington told her Dr. Story was not a target of the investigation but might become one (*i.e.*, that he was a subject of the investigation).  SA24-26, 52-53; *see also* Justice Manual § 9-11.151 (explaining the distinction between a "target" and a "subject").  That testimony fully accorded with the proffer letter that Blackington sent to Dr. Story in February 2021, which Ascension obtained and filed in the state court litigation, and which opened by recounting that "[a]s you are aware, you are a subject of a federal investigation into violations of 21 U.S.C. § 843(a)(3) (acquisition of controlled substances by fraud) and related offenses."  Ascension's State Court Vol. IV, at 7-9.

Finally, Ascension's own personnel could of course inform Ascension (and testify about) the communications they may have had

with DOJ, and those communications in any event would not be relevant to establishing what *Dr. Story* knew "about his status in the investigation," which was the only need that Ascension had cited in its *Touhy* request.  A12.

2.  Notably, Ascension's brief does not explain why DOJ was wrong in its assessment of the weak link between the requested testimony and the need for it that Ascension had offered in its *Touhy* request.  Instead, Ascension focuses heavily on its *current* desire to show that Dr. Story lied at his deposition when he claimed he had never been told he was a subject of the investigation—a lie that Ascension says is made plain by the February 2021 proffer agreement.  Opening Br. 21-22, 24-25, 35-36.  Apparently, as the state court litigation has progressed, Ascension has concluded that it would be especially valuable to try to destroy Dr. Story's credibility before the state court jury—apart from whatever relevance the underlying testimony itself has to any party's claims or defenses.  But under both general administrative law principles, as well as DOJ's *Touhy* regulations specifically, Ascension cannot attack DOJ's decision based on a ground that Ascension never presented to the agency.  *See, e.g.*, *United States v.*

29

*L. A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952) ("[A]s a general rule . . . courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice."); 28 C.F.R. § 16.22(c) (*Touhy* requestor must explain to the U.S. Attorney why the requested testimony is relevant to the state court proceeding).

In any event, since Ascension already has the proffer agreement, it would appear to have everything it needs to establish that Dr. Story was told at some point before February 17, 2021, that he was a subject of a government investigation. It is wholly unclear what additional information Ascension expects to obtain by deposing Blackington and Ratcliff.

Similarly misguided are Ascension's hearsay concerns about any testimony from the Ascension personnel who spoke to Ratcliff and Blackington. *See* Opening Br. 38. To the extent that Ascension is offering this testimony to explain Ascension's thought process in firing Dr. Story, there is no hearsay concern at all because Ascension witnesses can of course testify about comments they heard directly. Hearsay only becomes an issue if Ascension wants to establish the truth

of any statements that DOJ made to Ascension personnel about Dr. Story's role in the investigation. That issue would implicate the law enforcement privilege even more directly than the other contemplated testimony, and in any event would not be probative of Ascension's previously articulated question of what *Dr. Story* knew about the investigation at the time of his termination. Similarly, insofar as the issue is what Dr. Story knew about the investigation, hearsay should pose no bar to the testimony of Dr. Story's counsel recounting what DOJ personnel told her about the investigation—that testimony would be offered to show the information that made its way to Dr. Story rather than for the underlying truth of the DOJ statements.

3. The district court thus properly found that DOJ acted reasonably in concluding that the harms associated with diverting government personnel from their duties and providing testimony on sensitive subjects outweighed any need to provide evidence for state court litigation. Even if some aspect of the proposed testimony would not be automatically precluded by an applicable regulation or privilege, DOJ's regulations only authorize disclosure if the agency decisionmaker believes such disclosure is "appropriate" under the circumstances. 28

C.F.R. § 16.24(b)(2); *see also id*. § 16.26(c)-(d) (explaining that even when disclosure is not expressly prohibited by the *Touhy* regulations, the relevant DOJ decisionmaker may still refuse to authorize disclosure if "in that person's judgment, after considering [§ 16.26(a)], disclosure is unwarranted").

Under these broad standards, DOJ may decline to divert agency resources to private litigants—and thereby potentially impede the agency's law enforcement mission—when the requested information would have only limited additional benefit for the requesting litigant. *See Edwards*, 43 F.3d at 317 (sustaining agency *Touhy* decision when the requested files "would have produced nothing useful" for the requestor). And that is all the more true when (as here) denying the *Touhy* request will also serve other DOJ interests, such as protecting law enforcement investigatory practices, and protecting the privacy rights of individuals who were never charged with a crime. Indeed, as both the First and Fourth Circuits have recognized, "when an agency is not a party to an action, its choice of whether or not to comply with a third-party subpoena is essentially a policy decision about the best use of the agency's resources." *COMSAT*, 190 F.3d at 278; *see also Puerto*

*Rico*, 490 F.3d at 61.  That policy decision was, at a minimum, reasonable here.

4. Ascension's contrary arguments are without merit.  Ascension's effort to contest the applicability of the law enforcement privilege to testimony by a prosecutor and investigator regarding a criminal investigation fails at every level.  Regardless of the technicalities surrounding the privilege, as noted above, DOJ reasonably concluded that the risks to its law enforcement interests outweighed the limited benefits of the requested testimony, which alone suffices to uphold the government's decision under the APA.  But in any event, Ascension's technical arguments are without merit.

Ascension challenges the applicability of the privilege by pointing to the nonexhaustive, 10-part multifactor test set out in *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 343 (E.D. Pa. 1973), which some courts have found helpful in determining when a party has overcome the law enforcement privilege.  That test has never been expressly adopted by this Court.  *Cf. Dellwood Farms*, 128 F.3d at 1125 (merely describing the inquiry as a "particularistic and judgmental task" that is "confided to the discretion of the district judge" with "a pretty strong presumption

against lifting the privilege").  But to the extent this test is even helpful, it does not so clearly cut in Ascension's favor to demonstrate that DOJ's decision was arbitrary and capricious—especially after accounting for the "strong presumption" against disclosure.

Several of the factors cut strongly in the government's favor. Courts applying the 10-factor test consider "whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question" (Ascension is not), "whether the information sought is available through other discovery or from other sources" (as discussed above, it is), and "the importance of the information sought to the plaintiff's case" (as discussed above, quite limited).  *Frankenhauser*, 59 F.R.D. at 344; *accord Dellwood Farms*, 128 F.3d at 1125 (recognizing that the privilege would not normally be overcome when the evidence is sought for a civil proceeding).  Likewise, allowing testimony regarding an investigation of this kind could "thwart governmental processes by discouraging citizens from giving the government information" and have an "impact upon persons who have given information"— potentially including Dr. Story's patients, who could be at risk "of

having their identities disclosed." *Frankenhauser*, 59 F.R.D. at 344. And because the testimony would require assessment of the state of an investigation, consideration of "whether the information sought is factual data or evaluative summary" does not favor disclosure. *Id.*

None of this is overcome by the few factors in this multi-part test that may favor Ascension (effects on evaluative programs, whether the investigation is ongoing, whether there are ongoing disciplinary proceedings, and whether the underlying suit is non-frivolous). In light of the other factors discussed above, these factors hardly overcome the clear presumption against the privilege—let alone show that DOJ acted arbitrarily and capriciously in invoking it.[5]

Ascension further claims that the privilege cannot apply because Dr. Story "waived" any confidentiality concerns by filing his state court suit against Ascension, and Ascension "waiv[ed]" the same via its *Touhy*

---

[5] Ascension also wrongly contends that DOJ bears the burden of proof in establishing that the privilege applies. The case it cites, *Anderson v. Marion Cty. Sheriff's Dep't*, 220 F.R.D. 555, 563 (S.D. Ind. 2004), concerned one litigant's attempt to assert the privilege directly against an opposing litigant, rather than an APA case involving review of administrative action. In an APA suit, this Court has expressly recognized that the party contesting an agency's action must bear the burden of proof. *See, e.g.*, *Sierra Club v. Marita*, 46 F.3d 606, 619 (7th Cir. 1995).

request. The privilege belongs to the government, not to any private party. At most, a private party could waive its own privacy interests. Even as to those interests, it is far from clear that Dr. Story can be deemed to have waived privacy interests relating to a criminal investigation merely by challenging the termination of his employment. Moreover, it is quite clear that other parties, such as Dr. Story's patients or other potential targets or subjects of the investigation, have effected no such waiver. Although Ascension now contends that the names of such individuals would not need to be disclosed, it did not say so in its original request, *see* A8-10, A13, and in any event the government was not compelled to depend on a representation regarding protections that might apply in the course of state court litigation.

5. Ascension separately maintains that DOJ can *never* invoke the law enforcement privilege with respect to testimony. But the Department's *Touhy* regulations do not stand for the unlikely proposition that DOJ must accede to providing testimony without regard to the possibility that sensitive law enforcement information will be disclosed.

Ascension relies on its interpretation of one paragraph in DOJ's *Touhy* regulations, which states that DOJ will normally refuse to authorize disclosure when (among other reasons), "[d]isclosure would reveal investigatory records compiled for law enforcement purposes, and would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired." 28 C.F.R. § 16.26(b)(5). Because this provision references "records," Ascension concludes that testimony can never be implicated. But Ascension ignores that the regulations also require DOJ to consider "[w]hether disclosure is appropriate under the relevant substantive law concerning privilege." *Id.* § 16.26(a)(2). And even the reference to "records" itself is best read to encompass oral testimony regarding material in DOJ files or learned through DOJ duties. *See id.* § 16.21(a) (noting that DOJ's *Touhy* regulations govern "the production or disclosure of any material contained in the files of [DOJ], any information relating to material contained in the files of [DOJ], or any information acquired by any person while such person was" performing official DOJ duties and employed by DOJ).

More generally, DOJ's *Touhy* regulations further permit DOJ to withhold information for reasons *not specifically listed* in the agency's *Touhy* regulations.  *See* 28 C.F.R. § 16.26(c)-(d) (explaining that even when none of the factors listed in § 16.26(b) are present, the relevant DOJ decisionmaker may still refuse to authorize disclosure if "in that person's judgment, after considering [§ 16.26(a)], disclosure is unwarranted"); *id.* § 16.24(b)(2) (responsible official may only authorize disclosure if he or she believes such disclosure is "appropriate" under the circumstances).  And in any event, DOJ's *Touhy* regulations "only . . . provide guidance for the internal operations of [DOJ], and [are] not intended to, and do[] not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by a party against the United States."  *Id.* § 16.21(d).  There is no loophole compelling U.S. Attorneys to consent to testimony by prosecutors about their criminal investigations.

Ascension also briefly complains that DOJ did not specifically consider whether the depositions it requested would have been appropriate under Indiana law.  Opening Br. 24; *see also* 28 C.F.R. § 16.26(a)(1).  The fact that DOJ did not reject the request on that

additional ground casts no doubt on the reasons actually given for refusing the testimony, which do not depend on Indiana law. DOJ was not required to analyze Indiana law if the request would be denied even on the assumption that there is no state law barrier to the depositions.

### B. The Requested Testimony Implicated The Grand Jury Secrecy Rule

1. Although the district court did not reach the issue (and this Court therefore likewise need not address the subject), Ascension's challenges to DOJ's invocation of grand jury secrecy are also without merit. The agency's *Touhy* regulations state that DOJ will not approve disclosures that "would violate . . . a rule of procedure, such as the grand jury secrecy rule." 28 C.F.R. § 16.26(b)(1). The grand jury secrecy rule is codified in Federal Rule of Criminal Procedure 6(e), and it directs that unless the Federal Criminal Rules provide otherwise, "an attorney for the government" is prohibited from "disclos[ing] a matter occurring before the grand jury." Fed. R. Crim. P. 6(e)(2)(B)(vi). This secrecy rule serves a variety of interests: it encourages witnesses to fully and voluntarily cooperate with grand jury investigations; it prevents those who might be indicted from pressuring grand jurors or evading capture; and it protects those who were investigated yet not

39

indicted from being held up to public ridicule.  *See Douglas Oil Co. of Cal. v. Petrol Stops N.W.*, 441 U.S. 211, 218-19 (1979).  These interests do not disappear even if a grand jury has concluded its work, as the rule is concerned in part with the effect a disclosure might have "upon the functioning of future grand juries."  *Id.* at 222.

The standard for determining whether something constitutes a "matter[] occurring before the grand jury" is whether the information will "reveal something about the grand jury proceedings."  *United States v. Stanford*, 589 F.2d 285, 291 (7th Cir. 1978); *see also Martin v. Consultants & Adm'rs, Inc.*, 966 F.2d 1078, 1097 (7th Cir. 1992).  "Thus, when testimony or data is sought for its own sake for its intrinsic value . . . rather than to learn what took place before the grand jury, it is not a valid defense to disclosure that the same documents had been, or were presently being, examined by a grand jury."  *Stanford*, 589 F.2d at 291 (internal quotation marks omitted).  But if the disclosure of information *will* reveal something about the grand jury's investigation, then the information can be "before the grand jury" for purposes Rule 6(e) even if the information was not literally presented to the grand jury.  *See In re Special February, 1975 Grand Jury*, 662 F.2d 1232, 1234, 1237-238,

1244 (7th Cir. 1981) (after an individual provided a statement to the U.S. Attorney's office in lieu of having to comply with a grand jury subpoena, an AUSA summarized information about that statement in a "memorandum to file," and the memorandum was used to prepare a statement the individual read to the grand jury; that memorandum was held to be "before the grand jury"); *id.* at 1238 (witness statements made to special agent, under threat of grand jury subpoena, held to be "before the grand jury"); *Martin*, 966 F.2d at 1097 (FBI reports are covered by Rule 6(e) where they are closely related to the grand jury investigation and their "disclosure would reveal the identities of targets and other witnesses").

This case concerns a request for testimony about communications on several topics, including the identity of the subjects and targets of a federal investigation that included a grand jury component, the enforcement of grand jury subpoenas, and a proffer agreement that Ascension describes as "provid[ing] Dr. Story with use immunity for his grand jury testimony." *See, e.g.*, Opening Br. 5, 7; Ascension's State Court Vol. III, at 76-81, 91, 98-99 (discussions regarding compliance with grand jury subpoenas); Ascension's State Court. Vol. III, at 81, 98-

99 (noting communications about another grand jury subpoena that occurred after Dr. Story's termination); SA30-32 (discussions regarding grand jury subpoenas sent to Dr. Story and related entities). DOJ reasonably concluded that testimony regarding these topics could reveal something about the grand jury proceedings, and reasonably concluded that such testimony should not be permitted, particularly in light of the other interests also at stake (such as DOJ's law enforcement and resource interests, and third-party privacy interests, *see supra*, pp.24-39).

Ascension underscores the error in its argument by relying on this Court's decision in *Stanford*, which authorized the disclosure of documents that, the Court held, would not reveal anything about the grand jury investigation. That case concerned the disclosure to criminal defendants of their own welfare records, which had been subpoenaed by the grand jury but were not identified as grand jury records at the time they were disclosed, and whose disclosure thus revealed nothing about the grand jury process. *Stanford*, 589 F.2d at 291. Here, by contrast, Ascension wants to ask questions about the "federal criminal investigation," whether Dr. Story "was a subject of [the] investigation,"

and whether Dr. Story "could potentially become a target of the investigation."  Opening Br. 30; *see also In re Special March 1981 Grand Jury*, 753 F.2d 575, 578-79 (7th Cir. 1985) (allowing disclosure of documents that happen to have been obtained through a grand jury subpoena but acknowledging that in some circumstances information about grand jury subpoenas "could be used to infer the nature and maybe the direction of [the grand jury's] investigation," and hence could be covered by the grand jury secrecy rule); *Anaya v. United States*, 815 F.2d 1373, 1378-79 (10th Cir. 1987) (similar).  The fact that these questions might *also* reveal what was communicated to Dr. Story and others does not undermine this point.

Ascension also errs in relying on a purported "waiver" of grand jury secrecy by Ascension that it sees as implicit in its *Touhy* request.  Even assuming that any such interests are subject to waiver (much less implicit waiver), such a waiver could suffice at most to waive the interests that any Ascension employees have in secrecy.  That would not address any interests separately possessed by Dr. Story, any patients involved in the investigation, any other witnesses, and by the government itself.

2. As a fallback, Ascension argues that even if Rule 6(e) would ordinarily treat the information as grand jury material, Ascension has shown a "particularized need" for it that justifies disclosure. Opening Br. 34. But that is not the relevant question. This case involves judicial review of a *Touhy* request, not a petition asking the district court where the grand jury was convened to "authorize disclosure . . . of a grand-jury matter." Fed. R. Crim. P. 6(e)(3)(E); *see also Douglas Oil*, 441 U.S. at 216, 220, 223 (pointing to the "particularized need" standard as the mechanism for adjudicating a Rule 6(e) disclosure petition). Such a petition would be filed as a separate action in district court and would generally require that other interested parties (potentially including Dr. Story and some of his patients) be given "a reasonable opportunity to appear and be heard" before disclosure is ordered. Fed. R. Crim. P. 6(e)(3)(F). And the district court would then need to apply its sound discretion to analyze the matter. *See In re Grand Jury Proceedings, Special September, 1986*, 942 F.2d 1195, 1198 (7th Cir. 1991). But because no such petition was ever filed here, Ascension's invocation of the particularized need standard is irrelevant, except insofar as the stringency of that standard underscores the

reasonableness of the government's efforts to protect grand jury information in its response to the *Touhy* request at issue.  *See id.* ("[T]he standard for determining when the traditional secrecy of the grand jury may be broken is deliberately stringent" and so parties must show "that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed.").

## CONCLUSION

For the foregoing reasons, the judgment of the district court

should be affirmed.

Respectfully submitted,

BRIAN M. BOYNTON
  *Principal Deputy Assistant*
    *Attorney General*

ZACHARY A. MYERS
  *United States Attorney*

DANIEL TENNY
  *s/ Benjamin M. Shultz*
BENJAMIN M. SHULTZ
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7211*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-3518*
  *Benjamin.Shultz@usdoj.gov*

February 2023

46

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 8581 words according to the count of Microsoft Word for Microsoft 365.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using in Century Schoolbook 14-point font, a proportionally spaced typeface.

*s/ Benjamin M. Shultz*
Benjamin M. Shultz

**CERTIFICATE OF SERVICE**

I hereby certify that on February 1, 2023, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system.  Service will be accomplished by the appellate CM/ECF system.


*s/ Benjamin M. Shultz*
Benjamin M. Shultz

**ADDENDUM**

# TABLE OF CONTENTS

5 U.S.C. § 706 ................................................................................ A1

28 C.F.R. § 16.21 .......................................................................... A2

28 C.F.R. § 16.22 .......................................................................... A3

28 C.F.R. § 16.24 .......................................................................... A4

28 C.F.R. § 16.26 .......................................................................... A8

**5 U.S.C. § 706**

**§ 706. Scope of review.**

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall--

**(1)** compel agency action unlawfully withheld or unreasonably delayed; and

**(2)** hold unlawful and set aside agency action, findings, and conclusions found to be--

    **(A)** arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

    **(B)** contrary to constitutional right, power, privilege, or immunity;

    **(C)** in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

    **(D)** without observance of procedure required by law;

    **(E)** unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

    **(F)** unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

**28 C.F.R. § 16.21**

**§ 16.21. Purpose and scope.**

**(a)** This subpart sets forth procedures to be followed with respect to the production or disclosure of any material contained in the files of the Department, any information relating to material contained in the files of the Department, or any information acquired by any person while such person was an employee of the Department as a part of the performance of that person's official duties or because of that person's official status:

> **(1)** In all federal and state proceedings in which the United States is a party; and

> **(2)** In all federal and state proceedings in which the United States is not a party, including any proceedings in which the Department is representing a government employee solely in that employee's individual capacity, when a subpoena, order, or other demand (hereinafter collectively referred to as a "demand") of a court or other authority is issued for such material or information.

**(b)** For purposes of this subpart, the term employee of the Department includes all officers and employees of the United States appointed by, or subject to the supervision, jurisdiction, or control of the Attorney General of the United States, including U.S. Attorneys, U.S. Marshals, U.S. Trustees and members of the staffs of those officials.

**(c)** Nothing in this subpart is intended to impede the appropriate disclosure, in the absence of a demand, of information by Department law enforcement agencies to federal, state, local and foreign law enforcement, prosecutive, or regulatory agencies.

**(d)** This subpart is intended only to provide guidance for the internal operations of the Department of Justice, and is not intended to, and does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by a party against the United States.

**28 C.F.R. § 16.22**

**§ 16.22. General prohibition of production or disclosure in Federal and State proceedings in which the United States is not a party.**

**(a)** In any federal or state case or matter in which the United States is not a party, no employee or former employee of the Department of Justice shall, in response to a demand, produce any material contained in the files of the Department, or disclose any information relating to or based upon material contained in the files of the Department, or disclose any information or produce any material acquired as part of the performance of that person's official duties or because of that person's official status without prior approval of the proper Department official in accordance with §§ 16.24 and 16.25 of this part.

**(b)** Whenever a demand is made upon an employee or former employee as described in paragraph (a) of this section, the employee shall immediately notify the U.S. Attorney for the district where the issuing authority is located. The responsible United States Attorney shall follow procedures set forth in § 16.24 of this part.

**(c)** If oral testimony is sought by a demand in any case or matter in which the United States is not a party, an affidavit, or, if that is not feasible, a statement by the party seeking the testimony or by his attorney, setting forth a summary of the testimony sought and its relevance to the proceeding, must be furnished to the responsible U.S. Attorney. Any authorization for testimony by a present or former employee of the Department shall be limited to the scope of the demand as summarized in such statement.

**(d)** When information other than oral testimony is sought by a demand, the responsible U.S. Attorney shall request a summary of the information sought and its relevance to the proceeding.

**28 C.F.R. § 16.24**

## § 16.24. Procedure in the event of a demand where disclosure is not otherwise authorized.

**(a)** Whenever a matter is referred under § 16.22 of this part to a U.S. Attorney or, under § 16.23 of this part, to an Assistant Attorney General, the Director of the EOUST, or their designees (hereinafter collectively referred to as the "responsible official"), the responsible official shall immediately advise the official in charge of the bureau, division, office, or agency of the Department that was responsible for the collection, assembly, or other preparation of the material demanded or that, at the time the person whose testimony was demanded acquired the information in question, employed such person (hereinafter collectively referred to as the "originating component"), or that official's designee. In any instance in which the responsible official is also the official in charge of the originating component, the responsible official may perform all functions and make all determinations that this regulation vests in the originating component.

**(b)** The responsible official, subject to the terms of paragraph (c) of this section, may authorize the appearance and testimony of a present or former Department employee, or the production of material from Department files if:

    **(1)** There is no objection after inquiry of the originating component;

    **(2)** The demanded disclosure, in the judgment of the responsible official, is appropriate under the factors specified in § 16.26(a) of this part; and

    **(3)** None of the factors specified in § 16.26(b) of this part exists with respect to the demanded disclosure.

**(c)** It is Department policy that the responsible official shall, following any necessary consultation with the originating component, authorize testimony by a present or former employee of the Department or the production of material from Department files without further authorization from Department officials whenever possible: *Provided*, That, when information is collected, assembled, or prepared in connection with litigation or an investigation supervised by a division of the Department or by the EOUST, the Assistant Attorney General in

charge of such a division or the Director of the EOUST may require that the originating component obtain the division's or the EOUST's approval before authorizing a responsible official to disclose such information. Prior to authorizing such testimony or production, however, the responsible official shall, through negotiation and, if necessary, appropriate motions, seek to limit the demand to information, the disclosure of which would not be inconsistent with the considerations specified in § 16.26 of this part.

**(d)(1)** In a case in which the United States is not a party, if the responsible U.S. attorney and the originating component disagree with respect to the appropriateness of demanded testimony or of a particular disclosure, or if they agree that such testimony or such a disclosure should not be made, they shall determine if the demand involves information that was collected, assembled, or prepared in connection with litigation or an investigation supervised by a division of this Department or the EOUST. If so, the U.S. attorney shall notify the Director of the EOUST or the Assistant Attorney General in charge of the division responsible for such litigation or investigation, who may:

> **(i)** Authorize personally or through a Deputy Assistant Attorney General, the demanded testimony or other disclosure of the information if such testimony or other disclosure, in the Assistant or Deputy Assistant Attorney General's judgment or in the judgment of the Director of the EOUST, is consistent with the factors specified in § 16.26(a) of this part, and none of the factors specified in § 16.26(b) of this part exists with respect to the demanded disclosure;

> **(ii)** Authorize, personally or by a designee, the responsible official, through negotiations and, if necessary, appropriate motions, to seek to limit the demand to matters, the disclosure of which, through testimony or documents, considerations specified in § 16.26 of this part, and otherwise to take all appropriate steps to limit the scope or obtain the withdrawal of a demand; or

> **(iii)** If, after all appropriate steps have been taken to limit the scope or obtain the withdrawal of a demand, the Director of the EOUST or the Assistant or Deputy Assistant Attorney General does not authorize the demanded testimony or other disclosure,

A5

refer the matter, personally or through a Deputy Assistant Attorney General, for final resolution to the Deputy or Associate Attorney General, as indicated in § 16.25 of this part.

**(2)** If the demand for testimony or other disclosure in such a case does not involve information that was collected, assembled, or prepared in connection with litigation or an investigation supervised by a division of this Department, the originating component shall decide whether disclosure is appropriate, except that, when especially significant issues are raised, the responsible official may refer the matter to the Deputy or Associate Attorney General, as indicated in § 16.25 of this part. If the originating component determines that disclosure would not be appropriate and the responsible official does not refer the matter for higher level review, the responsible official shall take all appropriate steps to limit the scope or obtain the withdrawal of a demand.

**(e)** In a case in which the United States is a party, the Assistant General or the Director of the EOUST responsible for the case or matter, or such persons' designees, are authorized, after consultation with the originating component, to exercise the authorities specified in paragraph (d)(1)(i) through (iii) of this section: *Provided*, That if a demand involves information that was collected, assembled, or prepared originally in connection with litigation or an investigation supervised by another unit of the Department, the responsible official shall notify the other division or the EOUST concerning the demand and the anticipated response. If two litigating units of the Department are unable to resolve a disagreement concerning disclosure, the Assistant Attorneys General in charge of the two divisions in disagreement, or the Director of the EOUST and the appropriate Assistant Attorney General, may refer the matter to the Deputy or Associate Attorney General, as indicated in § 16.25(b) of this part.

**(f)** In any case or matter in which the responsible official and the originating component agree that it would not be appropriate to authorize testimony or otherwise to disclose the information demanded, even if a court were so to require, no Department attorney responding to the demand should make any representation that implies that the Department would, in fact, comply with the demand if directed to do so by a court. After taking all appropriate steps in such cases to limit the

A6

scope or obtain the withdrawal of a demand, the responsible official shall refer the matter to the Deputy or Associate Attorney General, as indicated in § 16.25 of this part.

**(g)** In any case or matter in which the Attorney General is personally involved in the claim of privilege, the responsible official may consult with the Attorney General and proceed in accord with the Attorney General's instructions without subsequent review by the Deputy or Associate Attorney General.

**28 C.F.R. § 16.26**

**§ 16.26. Considerations in determining whether production or disclosure should be made pursuant to a demand.**

**(a)** In deciding whether to make disclosures pursuant to a demand, Department officials and attorneys should consider:

> **(1)** Whether such disclosure is appropriate under the rules of procedure governing the case or matter in which the demand arose, and

> **(2)** Whether disclosure is appropriate under the relevant substantive law concerning privilege.

**(b)** Among the demands in response to which disclosure will not be made by any Department official are those demands with respect to which any of the following factors exist:

> **(1)** Disclosure would violate a statute, such as the income tax laws, 26 U.S.C. 6103 and 7213, or a rule of procedure, such as the grand jury secrecy rule, F.R.Cr.P., Rule 6(e),

> **(2)** Disclosure would violate a specific regulation;

> **(3)** Disclosure would reveal classified information, unless appropriately declassified by the originating agency,

> **(4)** Disclosure would reveal a confidential source or informant, unless the investigative agency and the source or informant have no objection,

> **(5)** Disclosure would reveal investigatory records compiled for law enforcement purposes, and would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired,

> **(6)** Disclosure would improperly reveal trade secrets without the owner's consent.

**(c)** In all cases not involving considerations specified in paragraphs (b)(1) through (b)(6) of this section, the Deputy or Associate Attorney General will authorize disclosure unless, in that person's judgment, after considering paragraph (a) of this section, disclosure is unwarranted. The Deputy or Associate Attorney General will not

approve disclosure if the circumstances specified in paragraphs (b)(1) through (b)(3) of this section exist. The Deputy or Associate Attorney General will not approve disclosure if any of the conditions in paragraphs (b)(4) through (b)(6) of this section exist, unless the Deputy or Associate Attorney General determines that the administration of justice requires disclosure. In this regard, if disclosure is necessary to pursue a civil or criminal prosecution or affirmative relief, such as an injunction, consideration shall be given to:

**(1)** The seriousness of the violation or crime involved,

**(2)** The past history or criminal record of the violator or accused,

**(3)** The importance of the relief sought,

**(4)** The importance of the legal issues presented,

**(5)** Other matters brought to the attention of the Deputy or Associate Attorney General.

**(d)** Assistant Attorneys General, U.S. Attorneys, the Director of the EOUST, U.S. Trustees, and their designees, are authorized to issue instructions to attorneys and to adopt supervisory practices, consistent with this subpart, in order to help foster consistent application of the foregoing standards and the requirements of this subpart.