No. 22-3009

_____

# United States Court of Appeals
# For the Seventh Circuit

_____

| | |
|---|---|
| ST. VINCENT MEDICAL GROUP, INC. d/b/a, ASCENSION MEDICAL GROUP-INDIANA, | ) Appeal from the United States<br>) District Court for the Southern<br>) District of Indiana, Indianapolis<br>) Division |
| Plaintiff-Appellant, | )<br>) Case No. 1:22-mc-00011-JPH-MG |
| v. | )<br>) Honorable James Patrick Hanlon, |
| UNITED STATES DEPARTMENT OF JUSTICE, | ) District Judge.<br>)<br>) |
| Defendant-Appellee. | ) |

---

## APPELLANT'S REPLY BRIEF

---

Respectfully submitted,

/s/  *Andrew M. McNeil*
_____
Andrew M. McNeil (#19140-49)
Bryan H. Babb (#21535-49)
Tyler J. Moorhead (#34705-73)
Bose McKinney & Evans LLP
111 Monument Circle, Suite 2700
Indianapolis, IN 46204
317-684-5000   Fax: 317-684-5173
amcneil@boselaw.com
bbabb@boselaw.com
tmoorhead@boselaw.com

*Attorneys for Appellant*

# TABLE OF CONTENTS

SUMMARY OF THE ARGUMENT ................................................................. 1

ARGUMENT ON STANDARD OF REVIEW ...................................................... 2

    I.    The DOJ's Refusal to Participate in Discovery Is Contrary to Reason, Relevance, and Proportionality ......................................................... 4

        A.   The DOJ misapplied the law enforcement investigative privilege ............... 4

        B.   Even if applicable, the law enforcement investigative privilege does not support the DOJ's refusal to provide deposition testimony ............................................................................ 7

        C.   The DOJ overstates the application of the grand jury secrecy rule ..............12

        D.   The DOJ's eggs are in the investigative privilege and grand jury secrecy baskets, only ..............................................................15

CONCLUSION ...................................................................................16

CERTIFICATE OF COMPLIANCE ...............................................................17

CERTIFICATE OF SERVICE .....................................................................18

# TABLE OF AUTHORITIES

## Cases

*C & N Corp. v. Gregory Kane & Illinois River Winery, Inc.*,
  756 F.3d 1024 (7th Cir. 2014) .......................................................................15

*Donald v. Outlaw*,
  No. 2:17-cv-32-TLS-JPK, 2020 WL 2899689 (N.D. Ind. June 2, 2020), *review denied*,
  No. 2:17-cv-32-TLS-JPK, 2022 WL 740764 (N.D. Ind. Mar. 11, 2022) ............................. 3

*Edwards v. DOJ*,
  43 F.3d 312 (7th Cir. 1995) ......................................................................... 3

*In re Grand Jury Investigation (Lance)*,
  610 F.2d 202 (5th Cir. 1980) .......................................................................13

*In Re Grand Jury Subpoena*,
  920 F.2d 235 (4th Cir. 1990) .......................................................................13

*In re Special February, 1975 Grand Jury*,
  662 F.2d 1232 (7th Cir. 1981) ......................................................................14

*Martin v. Consultants & Administrators, Inc.*,
  966 F.2d 1078 (7th Cir. 1992) ......................................................................14

*Matter of Special Mar. 1981 Grand Jury*,
  753 F.2d 575 (7th Cir. 1985) .......................................................................13

*Taylor v. Gilbert*,
  No. 2:15-cv-348-JMS-MJD, 2018 WL 1334935 (S.D. Ind. Mar. 15, 2018) ......................... 3

*United States v. Dynavac*,
  6 F.3d 1407 (9th Cir. 1993) ........................................................................13

*United States v. Stanford*,
  589 F.2d 285 (7th Cir. 1978) .......................................................................13

## Statutes

28 C.F.R. § 16.21(a) ................................................................................. 6
28 C.F.R. § 16.26(a)(2) .............................................................................. 6
28 C.F.R. § 16.26(b)(1) ..............................................................................12
28 C.F.R. § 16.26(c) ................................................................................. 6
44 U.S.C. § 3301(a) .................................................................................. 4

## Rules

28 C.F.R. § 16.26(b)(5) ............................................................................4, 6
Fed. R. App. P. 32 ..................................................................................17
Fed. R. Crim. P. 6(e) ...........................................................................12, 13
Fed. R. Crim. P. 6(e)(2)(B)(vi) .....................................................................12
Federal Rules of Civil Procedure .................................................................2, 4

## SUMMARY OF THE ARGUMENT

It is arbitrary and capricious for the Department of Justice to deny a state court litigant like Ascension access to relevant and discoverable information when none of the reasons advanced by the DOJ holds up under even light scrutiny.

DOJ personnel Blackington and Ratcliff informed Ascension, out of the blue, in the summer of 2020 that the federal government had received Ascension's records from one Dr. Story in response to a joint DOJ/DEA investigative subpoena. Over the next several weeks, Ascension personnel learned from Blackington and Ratcliff that Dr. Story and his prescribing practices were of interest to them and that they wanted to interview Dr. Story's co-workers about Dr. Story's prescribing practices. During that same time, Ascension took its own look at Dr. Story and ultimately decided to terminate his employment, effective immediately, for cause. Dr. Story then sues, is dismissive of his role in the federal government's investigation, and says Ascension breached his employment agreement when it fired him without notice.

The DOJ now wants nothing to do with Dr. Story and Ascension. It says that the grand jury secrecy rule, its investigative privilege, its *Touhy* regulations, and its general view of the matter make its cooperation with Ascension "unwarranted."

This is wrong. The DOJ's rejection of Ascension's *Touhy* request is not supported by the law. The DOJ's reliance of the law enforcement investigative privilege is misplaced where the government cannot rebut the plain language of the rule which expressly states it applies only to "records," not conversations. Regardless, even applying the privilege to conversations does not justify the DOJ's denial of

Ascension's request, as the balancing of harms clearly weighs in Ascension's favor. There is no risk to the DOJ where Dr. Story already publically announced his involvement in the investigation by way of the State Court Matter. On the other hand, the harm to Ascension is very real because without Blackington's and Ratcliff's testimony, the jury will not receive the full picture of evidence in the State Court Matter to Ascension's detriment.

The DOJ's reliance on the grand jury secrecy rule fares no better. This Circuit has taken a narrow view of the rule and applies its protections only to information that actually discloses what took place during the grand jury proceeding or to information that could interfere with jury deliberations. That is far removed from this case, where Ascension seeks depositions on a limited category of conversations occurring outside the grand jury and that have nothing to do with any testimony presented to the grand jury.

The DOJ's appellate brief failed to address the remaining two bases for its original denial of Ascension's *Touhy* request, namely, the work product doctrine and third-party privacy interests. It has waived its opportunity to do so.

In sum, whether under the APA or the Federal Rules of Civil Procedure, the DOJ's refusal to cooperate in the discovery process of the State Court Matter is unreasonable, arbitrary, and unjustified. It cannot stand.

## ARGUMENT ON STANDARD OF REVIEW

This Court has all of the information it needs to determine whether it should view the evidence and argument in this case through the lens of the discovery rules

or only under the APA's arbitrary and capricious standard. Ascension's brief identified the circuit split on which the Seventh Circuit has not yet chosen a side, and it presented several cases favoring the "modern view" of using the discovery rule's reasonableness standard to handle non-party requests subject to the DOJ's *Touhy* regulations. (ECF No. 9 at 17-23.)

In response, the DOJ summarily concludes that the APA standard applies without application of the discovery rules because *Edwards v. DOJ*, 43 F.3d 312, 315–16 (7th Cir. 1995) requires this result. Not so. In *Edwards*, the parties agreed "to recast the federal proceeding as an APA claim" so the Court used the APA standard based upon the parties' agreement. *Id.* at 314. That is clearly not the case here where the parties dispute the standard. *Edwards* is not dispositive, and more recent cases identify the circuit split with regard to the Seventh Circuit. *See Taylor v. Gilbert*, No. 2:15-cv-348-JMS-MJD, 2018 WL 1334935, at 2 (S.D. Ind. Mar. 15, 2018); *see also Donald v. Outlaw*, No. 2:17-cv-32-TLS-JPK, 2020 WL 2899689, at *7 (N.D. Ind. June 2, 2020), *review denied*, No. 2:17-cv-32-TLS-JPK, 2022 WL 740764 (N.D. Ind. Mar. 11, 2022).

This Court should apply the modern view and its application of the discovery rules. This permits an equal playing field for litigants regardless of whether the underlying party is in state court or federal court. The federal government's sovereign immunity concern is mitigated by applying the discovery rules consistently within the APA's arbitrary and capricious standard. That is, a federal district court may assess the reasonableness or capriciousness of the agency's final action in view of the

liberal discovery rules. All *Touhy* cases are discovery cases, and the federal government should not be afforded the special privilege of opting out where, on balance, a litigant's need for evidence outweighs the government's objections.[1]

ARGUMENT

### I.    The DOJ's Refusal to Participate in Discovery Is Contrary to Reason, Relevance, and Proportionality

#### A.    The DOJ misapplied the law enforcement investigative privilege

The law enforcement investigative privilege does not apply to Ascension's narrow *Touhy* request; the DOJ acted arbitrarily and unreasonably when it relied on that privilege in denying Ascension access to relevant evidence.

The privilege states that the government shall not release documents if the "[d]isclosure would reveal investigatory records[2] compiled for law enforcement purposes, and would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired." 28 C.F.R. § 16.26(b)(5). On its face, this privilege protects "records." 28 C.F.R. § 16.26(b)(5). Lower courts have interpreted it that way as well: "The law enforcement

---

[1] The DOJ also argues that Ascension brought this claim solely under the APA so this Court must use the APA standard. (ECF 16-1 at 26.) In reality, Ascension alleged in its Complaint, "In the alternative, to the extent the DOJ's *Touhy* response is evaluated under the Federal Rules of Civil Procedure as opposed to the arbitrary and capricious standard of the APA, the DOJ is preventing the discovery of relevant information that is proportional to the needs of the State Court Matter." (ECF 1, ¶ 28.)

[2] At least one place in the United States Code defines "records" as "all record information, regardless of form or characteristics, made or received by a Federal agency under Federal law . . . ." 44 U.S.C. § 3301(a). This can't mean "conversations."

4

investigatory privilege is a qualified common law privilege protecting civil as well as criminal law enforcement investigatory *files* from civil discovery. . . . *Anderson v. Marion Cnty. Sheriff's Dep't*, 220 F.R.D. 555, 563 (S.D. Ind. 2004) (citations and quotations omitted) (emphasis added).

Nevertheless, the district court in this case applied this privilege to Ascension's *Touhy* request on a "close enough" approach, writing, "[T]he DOJ's grounds for denial are tied to the regulation and are consistent with the purposes of the rule." (Order at 12.) But the DOJ's decision was premised on a rule protecting records. Ascension did not request records, and its targeted categories of requested deposition testimony were specific to communications between DOJ personnel and (1) Dr. Story; (2) Dr. Story's counsel; and (3) Ascension. None of these categories risk interfering with "enforcement proceedings" or impairing "investigative techniques and procedures." The DOJ's "grounds for denial" were not "consistent with the purposes of the rule;" they were contrary to the letter of the rule.

In support of the district court, the DOJ contends that Ascension's position on the limited scope of the privilege (to records) "fails at every level." (ECF 16-1 at 40.) But that is all that it states. The DOJ provides no analysis, cases, statutes, or argument to support its position that the privilege applies to conversations, "[r]egardless of the technicalities surrounding the privilege." (*Id.*) But if the privilege does not apply, the DOJ's determination "that the risk to its law enforcement interests outweighed the limited benefits of the requested testimony" (*id.*) is per se unreasonable.

At one point, the DOJ does say that "the reference to 'records' itself is best read to encompass oral testimony" because the purpose and scope section of the *Touhy* regulations mentions "material contained in the files" and "information relating to material contained in the files of the Department" (ECF 16-1 at 44 *citing* 28 C.F.R. § 16.21(a).) This argument is self-defeating, because the regulations demonstrate the DOJ's ability to use "records" when it means records as opposed to "information" or conversations. *Compare* 28 C.F.R. 16.21(b)(5), *with* 28 C.F.R. § 16.21(a).

The DOJ also asserts that ultimately it does not matter if the privilege applies only to "records," because other parts of the *Touhy* regulations state that the DOJ can consider "[w]hether disclosure is appropriate under the relevant substantive law concerning privilege" (28 C.F.R. 16.26(a)(2) (ECF No. 16-1 at 44), and that even when none of the factors listed in the *Touhy* regulations support denial, the decision maker can *still* deny access to the requested information if "in that person's judgment" they simply feel that "disclosure is unwarranted." 28 C.F.R. § 16.26(c); (ECF No. 16-1 at 45.) In other words, the DOJ asserts that it gets to do what it wants even when its own regulations do not otherwise support its position.

Notably, the DOJ did not rely on these provisions in denying Ascension's *Touhy* request. (*See* ECF Nos. 1-2, 1-4.) It relied only on the grand jury secrecy rule, the work product doctrine, the law enforcement investigatory privilege, and privacy interests of private citizens. (ECF Nos. 1-2, 1-4.) The DOJ's new position relies on different sections that are not part of the law enforcement investigative privilege that is codified at 28 C.F.R. 16.26(b)(5). The DOJ cannot bait and switch on appeal. *See*

*Dep't of Homeland Sec. v. Regents of the Univ. of California*, 207 L. Ed. 2d 353, 140 S. Ct. 1891, 1907 (2020) ("It is a foundational principle of administrative law that judicial review of agency action is limited to the grounds that the agency invoked when it took the action.") (cleaned up).

Even if the other regulations did apply, however, this does not help the DOJ. The fact that it gets to consider "the relevant substantive law concerning privilege" merely directs back to the privilege at issue – which expressly applies only to "records." Next, the fact that the ultimate decision maker at the DOJ can choose in his or her discretion not to produce information even when unsupported by the *Touhy* regulations does not give the DOJ unfettered discretion to deny disclosure without being checked by the judiciary. The DOJ's decision is still subject to this Court's review (whether under an arbitrary and capricious standard or the discovery rules).

In sum, the plain language of the law enforcement investigative privilege states that it applies to "records" – not oral conversations, which were the subject to Ascension's *Touhy* request. The DOJ's reliance on an inapplicable privilege is not a sound basis to refuse a state-court litigant access to relevant information.

### B. Even if applicable, the law enforcement investigative privilege does not support the DOJ's refusal to provide deposition testimony

Even if this Court determines that the law enforcement investigative privilege applies to oral testimony, the merits and underlying intent of the privilege further establish that it does not support the DOJ's denial.

As it relates to intent, "[t]he law enforcement investigative privilege is based primarily on the harm to law enforcement efforts which might arise from public

disclosure of ... investigatory files." *Anderson*, 220 F.R.D. at 563 (cleaned up). In fact, the privilege "can be overridden in appropriate cases by the need for the privileged materials. The balancing of that need—the need of the litigant who is seeking privileged investigative materials—against the harm to the government if the privilege is lifted is a particularistic and judgment task." *Anderson*, 220 F.R.D. at 563 (cleaned up). The issue here is the potential harm to law enforcement if the testimony is disclosed, and the harm to Ascension if it is not. This balancing act weighs in Ascension's favor.

The DOJ's argument on this front falls short. The DOJ claims that its harm is imminent because Ascension seeks testimony regarding: "who was a target or subject of the investigation at any given time" (ECF No. 16-1 at 33); "the identity of the subjects and targets of a federal investigation" (*id.* at 48); that "Dr. Story's patients [] could be at risk of having their identities disclosed" (*id.* at 41); and that these meager depositions could "thwart governmental processes by discouraging citizens from giving the government information and have an impact upon persons who have given information." (*Id.* at 41) (quotations omitted)

None of these statements hold up. Ascension was very clear and specific in its *Touhy* requests. It described the factual backdrop of Ratcliff's and Blackington's conversations with Dr. Story, his counsel, and Ascension and asked to depose them on those conversations. (ECF No. 1-1.) These narrowed conversations are the heart of this litigation. Ascension even explained in its first *Touhy* request letter that it initiated its own investigation of Dr. Story based on these conversations and the

information received from the DOJ. (ECF No. 1-1 at 1.) Ascension now simply seeks direct testimony from the DOJ personnel regarding what they said.

Ascension's request in no manner sought to identify multiple "subjects or targets" "at any given time." Its requests in no way encompass the identities of "Dr. Story's patients." And given the unique factual circumstances here (that Dr. Story made his participation in the investigation public by filing a lawsuit stating as such), there is no risk that these depositions will "thwart governmental processes" or "discourage[e] citizens from giving the government information." Stated differently, the unique factual circumstances of this case and Dr. Story voluntarily making his participation public reduce any real concern that this will create some type of precedent interfering with standard *Touhy* cases in the future.

The DOJ also understates Ascension's need for this testimony. The DOJ diminishes that need by calling relevant to "only one state court defense" (ECF 16-1 at 33); by saying Ascension "appear[s] to have everything it needs" (*id.* at 37); by asserting it is "unclear what additional information Ascension expects to obtain" (*id.* at 37); by offering that "the requested information would have only limited additional benefit" (*id.* at 39); and by suggesting that the depositions would hardly be worth it because "there was nothing of substance [in their testimony] that could assist Ascension." (*Id.* at 34.)

But the DOJ is not trying Dr. Story's case. Ascension is. From the outset, Ascension has pushed for this testimony because Dr. Story's knowledge of his own role in the federal investigation implicates his contractual duty to disclose his role to

Ascension, and because the DOJ's communications with Ascension contextualize the actions Ascension took and the decisions it made under the cause provisions of Dr. Story's contract. It may relate to "one defense," but it is an important one to Ascension. And it should matter to anyone concerned with the proper administration of justice in civil cases in Indiana.

Contrary to the DOJ's characterizations, the need for this testimony is not a newly found attempt to destroy Dr. Story's credibility. (ECF No. 16-1 at 36-37.) The fact that the apparent mendacity reflected in Dr. Story's complaint, his deposition, and his written discovery responses can be exposed by the testimony of Blackington and Ratcliff would be a benefit of that testimony; it is not the reason Ascension made the request in the first instance. Ascension raised the point to note the importance of having a fully developed evidentiary record to assist the administration of justice.

The DOJ also says that Ratcliff and Blackington have only limited testimony to provide to Ascension. (ECF No. 16-1 at 34, 39.) But whether they talked with Dr. Story, his attorneys, or Ascension for minutes or for hours is immaterial; they have unprivileged, relevant information. Additionally, the DOJ ignores the fact that while Ratcliff may have had two conversations with Dr. Story (ECF No. 16-1 at 18, 21, 34) he had additional substantive conversations with Ascension, which is the testimony Ascension also requested. (ECF No. 1-1.)

The DOJ's dismissal of Ascension's hearsay concerns also misses the mark. (ECF No. 16-1 at 37-38.) A party may offer evidence that would otherwise be hearsay for non-hearsay purposes if it has a basis to do so. But that same party may also want

to offer evidence for the truth of the matter asserted. Here, Ascension is operating by necessity. If it can't get the testimony of Blackington and Ratcliff, it may attempt to offer evidence about their statements for non-hearsay purposes, but that runs the risk a court ruling the evidence inadmissible. Ascension and the administration of justice both would prefer the direct evidence from Blackington and Ratcliff.

Driving this point home, Dr. Story just recently filed his reply in support of a motion in limine pending in the State Court Matter.[3] On the admissibility of communications between Ascension and the DOJ, Dr. Story argued, "To the extent that [Ascension] and the DOJ communicated with each other before the termination date, such communications are hearsay, **_unless Blackington or Ratcliff testifies_**." (*Id.* at 7-8) (emphasis added); *see also* (*id.* at 8) (additionally arguing that hearsay applies to other Ascension personnel attempting to testify as to communications with Blackington.) This factor should weigh heavily in any balancing test.

As a final point that tips the scales in Ascension's favor, the ten-factor test set for in the *Anderson* case favors Ascension. As the Southern District of Indiana explained in *Anderson*, "Although the Seventh Circuit has never expressly cited to *Frankenhauser* or its factors, that court has advanced tacit approval of *Frankenhauser's* balancing test through reliance on cases that have approved its application." *Anderson*, 220 F.R.D. at 564 (cleaned up).

---

[3] *See* ([www.mycase.in.gov](http://www.mycase.in.gov)) (using search query 29C01-2105-PL-003135, January 27, 2023 entry) (last visited February 17, 2023).

Ascension's initial brief described in detail how each of the ten factors weighed in its favor. (ECF No. 9 at 26-29.) In response, the DOJ attempts to swing only a few of the ten factors to its side and ultimately and summarily concludes that the testimony is available from other sources and is not important to Ascension's State Court Matter. (ECF No. 16-1 at 40-41.) Rather than repeat itself, Ascension stands by its analysis of the ten-factor test. The DOJ's refusal to present its employees for depositions in the State Court Matter on narrow topics concerning their direct conversations with Dr. Story, his counsel, and Ascension is arbitrary, capricious, and contrary to the rules of discovery.

### C.    The DOJ overstates the application of the grand jury secrecy rule

The parties agree that the DOJ's *Touhy* regulations state that the DOJ will not approve disclosures that "would violate . . . the grand jury secrecy rule" (28 C.F.R. § 16.26(b)(1)), and that the grand jury secrecy rule states that "an attorney for the government" is prohibited from "disclos[ing] a matter occurring before the grand jury." Fed. R. Crim. P. 6(e)(2)(B)(vi). That is where the agreements end. Ascension says the rule does not apply to the conversations Blackington and Ratcliff had with Dr. Story, his counsel, and Ascension outside the presence of the grand jury; the DOJ says the rule applies when information "will reveal something about the grand jury proceedings." (ECF 16-1 at 47.)

This Court has previously taken a narrow interpretation of the grand jury secrecy rule: "The restrictions of Rule 6(e) apply only to disclosure of matters occurring before the grand jury. Unless information reveals something about the

grand jury proceedings, secrecy is unnecessary. Thus, when testimony or data is sought for its own sake for its intrinsic value in furtherance of a lawful investigation rather than to learn what took place before the grand jury, it is not a valid defense to disclosure that the same documents had been, or were presently being, examined by a grand jury." *United States v. Stanford*, 589 F.2d 285, 291 (7th Cir. 1978) (quotation omitted). The Court has even recognized the disclosure of documents that were given to the grand jury as evidence, so long as the documents do not compromise jury deliberations. *Matter of Special Mar. 1981 Grand Jury*, 753 F.2d 575, 578 (7th Cir. 1985).

The Seventh Circuit is not alone in its interpretation that the grand jury secrecy rule does not apply to information that does not relate to the grand jury proceeding itself, as other circuits have taken similar approaches. *See In Re Grand Jury Subpoena,* 920 F.2d 235, 241 (4th Cir. 1990) (the rule protects "only the essence of what takes place in the grand jury room"); *United States v. Dynavac,* 6 F.3d 1407, 1413 (9th Cir. 1993) ( disclosure of "matters before the grand jury" must reveal some "secret aspect of the inner workings of the grand jury"); *In re Grand Jury Investigation (Lance)*, 610 F.2d 202, 217-18 (5th Cir. 1980) (The term "matters occurring before the grand jury" includes details about the grand jury's likely course of conduct in the future, although no Rule 6(e) violation in this regard occurs unless the disclosure contains details about the grand jury's inner workings or proceedings.) This is sensible, as the title of the rule is "Recording and Disclosing **the Proceedings**." Fed. R. Crim. P. 6(e) (emphasis added).

The DOJ cites to *In re Special February, 1975 Grand Jury*, 662 F.2d 1232 (7th Cir. 1981). (ECF No. 16-1 at 47-48.) This case does not advance the DOJ's position. There, the government prepared a memorandum based upon a statement made by an individual "as part of a plea agreement for the purpose of having it constitute the bulk of [the individual's] testimony when read by him to the grand jury." *In re Special February, 1975 Grand Jury*, 662 F.2d 1232, 1237 (7th Cir. 1981). In other words, the memorandum was literally the word-for-word statement that substituted the need for this individual to testify live at the actual grand jury proceeding. The Court upheld the grand jury secrecy protection because the "statement is too grand jury related to be artificially distinguished from the transcript of its reading to the grand jury." *Id.* at 1237-38. Here, the desired testimony relates to oral conversations that DOJ personnel had with Dr. Story, his lawyers, and Ascension outside of the grand jury room; Ascension is not seeking statements read to the grand jury.

The DOJ's citation to *Martin v. Consultants & Administrators, Inc.*, 966 F.2d 1078, 1097 (7th Cir. 1992) does not fare any better. (ECF No. 16-1 at 48.) There, the grand jury secrecy rule protected a report that "was closely tied to [the individual's] grand jury testimony and apparently was itself submitted to the Miami grand jury. Moreover, it contained the names of confidential grand jury witnesses." *Id.* at 1097. Again, that is not the case here. There are no records are at issue, only conversations,

and the DOJ does not argue that the conversations are in any way related to grand jury testimony.[4]

Grand jury secrecy simply does not apply to the testimony Ascension seeks to obtain from Ratcliff and Blackington. They openly had conversations with Dr. Story, his lawyers, and Ascension personnel outside of the grand jury context. Ascension desires their testimony for the intrinsic value of the evidence, not anything to do with the grand jury proceedings.

### D.     The DOJ's eggs are in the investigative privilege and grand jury secrecy baskets, only

The DOJ's *Touhy* responses raised the work product doctrine and third-party privacy interests. Ascension's brief explained why neither of these precludes Ratcliff's and Blackington's depositions. (ECF No. 9 at 45-46.) The DOJ failed to address or develop meaningful arguments on these points and waived its opportunity to do so. *C & N Corp. v. Gregory Kane & Illinois River Winery, Inc.*, 756 F.3d 1024, 1026 (7th Cir. 2014) ("Arguments that are underdeveloped, conclusory, or unsupported by law are waived on appeal.") (cleaned up).

---

[4] The DOJ's arguments that there is a risk of exposing the identity of multiple "subjects and targets" of the investigation or to "the functioning of future grand juries" (ECF 16-1 at 47, 48) have already been debunked elsewhere in this Reply. Ascension's *Touhy* request seeks testimony related to Dr. Story; the fact that he brought his involvement in the investigation to the public's attention by way of the State Court Matter curbs any real concern that this case could establish precedential value for future DOJ investigations.

CONCLUSION

Ascension should be permitted to depose Blackington and Ratcliff on the narrow matters set forth in its *Touhy* request. The district court's judgment saying otherwise should be reversed. The case should be remanded with appropriate instructions concerning those depositions.

Respectfully submitted,

/s/  *Andrew M. McNeil*
Andrew M. McNeil (#19140-49)
Bryan H. Babb (#21535-49)
Tyler J. Moorhead (#34705-73)
Bose McKinney & Evans LLP
111 Monument Circle, Suite 2700
Indianapolis, IN 46204
317-684-5000   Fax: 317-684-5173
amcneil@boselaw.com
bbabb@boselaw.com
tmoorhead@boselaw.com

*Attorneys for Appellant*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this Appellant's Reply Brief conforms to Federal Rule Appellate Procedure 32 and Circuit Rule 32.

1.     This brief complies with the type-volume limitations set forth in Federal Rule Appellate Procedure 32(a)(7) and 32(g), as supplemented by Circuit Rule 32, because it contains less than 6,500 words based on the "Word Count" feature of Microsoft Word.

2.     This brief complies with the typeface and type style requirements set forth in Circuit Rule 32 because the brief has been prepared in a proportionally-spaced typeface using Microsoft Word in 12-point Century font.

Dated: February 22, 2023

/s/ *Andrew M. McNeil*
Andrew M. McNeil

## CERTIFICATE OF SERVICE

I hereby certify that on February 22, 2023, I electronically filed the foregoing Appellant's Brief with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system. I certify that service was also made on the following parties via email this same date.

Shelese Woods
Assistant United States Attorney
Office of the United States Attorney
Southern District of Indiana
10 West Market Street, Suite 2100
Indianapolis, IN 46204
Shelese.Woods@usdoj.gov

Benjamin M. Shultz
Daniel Tenny
Civil Division, Appellate Staff
950 Pennsylvania AVE, NW, RM 7215
Washington, DC 20530
Benjamin.Shultz@usdoj.gov
Daniel.Tenny@usdoj.gov

/s/ *Andrew M. McNeil*
Andrew M. McNeil

4516141